RECEIVED

MAR 27 2012

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

BENJAMIN ADAMS, ET AL.

versus

BP AMERICA PRODUCTION CO.,
ET AL.

CIVIL ACTION NO. 10-1607
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court is a cross-motion for summary judgment by plaintiffs Benjamin Adams, Joe Adams, Fred Adams, and Roosevelt Adams, ("the plaintiffs") and a second cross-motion for summary judgment by defendants BP America Production Company ("BP") and Stacy Hanna ("Hanna") (hereinafter collectively referred to as "the defendants"). See Record Documents 41 and 52. For the reasons set forth below, the plaintiffs' cross-motion for summary judgment is **DENIED**, and the defendants' cross-motion for summary judgment is **GRANTED**.

## I. BACKGROUND

The plaintiffs filed suit in this court, pro se, against BP and Hanna[1] contending that they are heirs of interest in 640 acres in DeSoto Parish on which BP and others have drilled since 1963.[2] See Record Document 1 at 1-3. The oil and gas lease at issue was first executed by Virgil Adams, the plaintiffs' grandfather, on May 27, 1947. After Virgil Adams's death, his royalty interest in the lease transferred to his wife, Lovia Delta Adams. See Record Document 52, Ex. A at 2-3. The plaintiffs claim that they are now the owners of Lovia Delta Adams's royalty interest and demand payment from BP.[3]

The plaintiffs specifically claim in their complaint "Denial of Equal Rights under the Law; Deprivation of Rights; Conspiracy to Deprive and Interfere with the

---

[1] Hanna is a Division of Interest Analyst for BP and corresponded with the plaintiffs on several occasions during 2009 and 2010. See Record Document 52, Ex. A at 2.

[2] The record shows that the lease at issue covered only eighty acres as opposed to the plaintiffs' claim of 640. See Record Documents 52, Ex. 1 at ¶ 1, 72, Ex. B at ¶ 6. Nowhere in the record do any of the facts support their claim for 640 acres, nor do the plaintiffs attempt to provide support for that claim.

[3] On November 1, 2010, BP assigned its rights and obligations in the 1947 lease to Wildhorse Resources, LLC ("Wildhorse"). See Record Document 52, Ex. 10. BP reserved from the assignment all rights from and below the stratigraphic equivalent of the top of the Haynesville Zone. The wells at issue in this case are above the level reserved by BP and therefore were assigned to Wildhorse. See id., see Record Document 72, Ex. B at ¶ 9.

2

Civil Rights; [and] Obstructing Justice." Record Document 1. They seek declaratory and injunctive relief and monetary damages in an amount that exceeds $100,000,000.00, and they base their claims on 42 U.S.C. §§ 1081, 1983, 1985, 1986, 1988, 18 U.S.C. §§ 241, 242, 1961, 1964, and 1965. They also claim they are entitled to relief pursuant to Amendments I, V, VI, VIII, and XIV to the United States Constitution.[4] See id. at 1-3.

In response, the defendants filed a motion to dismiss the plaintiffs' claims, arguing that none of the statutory or constitutional provisions mentioned in the complaint entitle the plaintiffs to the relief they seek. See Record Document 35. Since the time the defendants filed their motion to dismiss, both sides have filed numerous documents with the court including cross-motions for summary judgment, oppositions, replies, and supplemental memoranda.[5] The court addresses all claims and issues in its summary judgment ruling in the instant case. Because the court disposes of the case on summary judgment, the defendants' motion to dismiss (Record Document 35) is rendered **MOOT**.

---

[4] In their amended complaint, the plaintiffs allege that BP purchased the 1947 lease from Conoco Phillips. The remaining content in the amended complaint is either a repeat of the original complaint or completely irrelevant to the case.

[5] The numerous documents are mostly due to the plaintiffs' filings with the court, most of which are repeats of previous arguments and conclusory factual allegations.

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and

---

[6] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Claims Pursuant To 42 U.S.C. §§ 1981, 1983, 1985(2) & (3), 1986 And 1988.**

The plaintiffs bring a claim pursuant to 42 U.S.C. § 1981.[7] To establish a section 1981 claim, a plaintiff must allege facts that support the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Green v. State Bar of Tex., 27 F.3d 1083, 1086 (5th Cir. 1994) (citing Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)). The plaintiffs do not assert in any of their pleadings that defendants had an intent to discriminate against them based upon race; nor do any of the facts mentioned implicate section 1981. The plaintiffs have not presented any allegations that support a claim under section 1981; therefore, the claim must be dismissed.

The plaintiffs also cite to 42 U.S.C. § 1983. Accordingly, at issue is whether defendants were acting "under color of state law" and whether "the alleged

---

[7] The plaintiffs actually cite to 42 U.S.C. § 1081, but that provision does not exist. Defendants address the claim as if the plaintiffs meant to cite 42 U.S.C. § 1981. The court will also address the claim in this manner.

infringement of federal rights [is] fairly attributable to the State." Cornish v. Corr. Servs Corp., 402 F.3d 545, 549 (5th Cir. 2005). "Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" Id. at 550 (quoting Am Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51, 119 S.Ct. 977, 985 (1999)).

The specific conduct alleged in this case is BP's drilling on the plaintiffs' land and not paying the related royalties. Not once do the plaintiffs make an intelligible argument that BP or Hanna was acting "under the color of state law", nor do they allege any facts that BP or Hanna's conduct was even remotely attributable to the state. The plaintiffs fail to address this issue not only in their initial pleadings, but also in their opposition to the defendants' motion to dismiss, which was clearly raised by defendants. Instead of addressing the issue, the plaintiffs cite to irrelevant case law, and discuss, ad nauseam, how the defendants committed "pirate acts" by making billions of dollars from operations on their property and refusing to pay royalties. Because the plaintiffs have failed to establish that the defendants' conduct is attributable to any state action, their section 1983 claim must be dismissed.

The plaintiffs also bring a claim pursuant to 42 U.S.C. §§ 1985(2) & (3), but neglect to explain how either section applies to their case. Subsection two involves obstructing justice in a court, which is clearly inapplicable in this case. As for

subsection three, "[t]o come within the ambit of section 1985(3), a complaint must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or deprived of any right or privilege of a citizen of the United States." Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 757 (5th Cir. 1987) (citing United Bhd. of Carpenters & Joinders of Am., Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3354-56 (1983)).

The plaintiffs have failed to allege facts that suggest any agreement among the defendants to deny them of any rights covered by section 1985(3). See Green, 27 F.3d at 1089. Furthermore, "[i]t is well-established in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus," and the plaintiffs have alleged no facts to suggest racial animus. Deubert, 820 F.2d at 757. Accordingly, the claims pursuant to sections 1985(2) & (3) must be dismissed, and because the plaintiffs failed to establish a claim under section 1985, their section 1986 claim must also be dismissed. See Lockett v. New Orleans City, 607 F.3d 992, 1002 (5th Cir. 2010) (the Fifth Circuit held that since the plaintiff failed to demonstrate a claim under section 1985, by definition the plaintiff could not

7

sustain a claim under section 1986). Likewise, the section 1988 claim must also be dismissed because it does not independently create a federal cause of action for deprivation of constitutional rights. See Weakley v. Sec. State Bank, 20 F.3d 468 (5th Cir. 1994).

C. **RICO Claims.**

The plaintiffs also base their claims on 18 U.S.C. §§ 241, 242, 1961, 1964 and 1965 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Sections 241 and 242 are criminal statutes and do not provide a private cause of action; therefore, those claims must be dismissed. See Deubert, 820 F.2d at 760. Section 1964(c) provides a private cause of action for any person injured by reason of a violation of section 1962. To succeed in this civil claim, "a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998) (citing Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989)). "Racketeering activity" is defined under 18 U.S.C. § 1961. The plaintiffs fail to specify any of the numerous activities covered by the statute, nor do they allege any particular facts that implicate any of the covered activities. They only state that defendants engaged in a pattern of racketeering through the "pirate acts" of stealing their royalties. The plaintiffs'

conclusory allegations are insufficient to sustain a private cause of action pursuant to the RICO statutes. Therefore, their RICO claims must be dismissed.

D. **Constitutional Claims.**

The plaintiffs bring claims pursuant to Amendments I, V, VI, VIII, and XIV to the United States Constitution. Their pleadings cite these constitutional provisions but fail to explain how they apply to this case or how the private conduct in question can be attributable to state action. For the plaintiffs to seek relief under these constitutional provisions, some state action must be responsible for the alleged deprivation of their constitutional rights. When the challenged action is by a private individual, state action may be found if there is such a "'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 930 (2001) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453 (1974)). The facts presented do not indicate that BP or Hanna's alleged conduct may be fairly treated as state action. Accordingly, the plaintiffs' constitutional claims are dismissed.

E. **State Law Claims.**

In their cross-motion for summary judgment, the defendants argue that the plaintiffs are not entitled under state law to receive royalty payments attributable to

9

the interest of Lovia Delta Adams and that the plaintiffs' individual claims against Hanna are entirely baseless. The plaintiffs, in their cross-motion for summary judgment, make the same arguments as in their prior pleadings.

Louisiana Revised Statute 31:137 provides that if a mineral lessor seeks the proper payment of royalties from the lessee, then the lessor must give written notice to the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease. Once notified, the lessee has thirty days within which to pay the royalties or to respond in writing stating a reasonable cause for nonpayment. See La. R.S. 31:138.

Benjamin Adams sent a letter to Conoco Phillips on August 25, 2009, demanding royalty payments on the mineral interest that he claims to have inherited from his grandmother, Lovia Delta Adams. See Record Document 52, Ex. 2. On September 14, 2009, BP responded to Benjamin Adams by letter after Conoco Phillips forwarded the letter to BP. The letter informed Benjamin Adams as to what documentation was required of him so BP could issue a transfer order reflecting the new ownership of Lovia Delta Adams's interest. See id., Ex. 3. BP requested, inter alia, death certificates of Lovia Delta Adams's deceased children and either succession or affidavits of heirship documents. The purpose of this request was to

ensure that BP would pay the proper parties and to lessen its exposure to liability. See id., Ex. A at 5.

BP corresponded on several occasions with the plaintiffs to obtain all of the necessary documentation to transfer Lovia Delta Adams's interest, but all of the requested documentation was never received. See id., Exs. 4, 5, and 6. Benjamin Adams alleges that he cannot obtain all the documentation per BP's request. See id., Exs. 7 and 8. Based upon these facts, the plaintiffs have given BP written notice of its demands, and BP has responded timely. The remaining issue is whether BP has reasonable cause for nonpayment.

The defendants argue that the 1947 lease is the law between the parties and that section 8 of that lease requires the plaintiffs to submit proper documentation demonstrating their ownership before they can receive royalty payments. Section 8 of the 1947 lease provides:

> No such change in ownership shall be binding on lessee nor impair the effectiveness of any payments made hereunder until lessee shall have been furnished, forty-five (45) days before payment is due, a certified copy of recorded instrument evidencing any transfer, inheritance, sale or other change in ownership.

See id., Ex. 1 at ¶ 8. Furthermore, Louisiana Revised Statute 31:138.1 provides that "if the lessor fails to supply the name, address, and tax identification number upon written request of the lessee, the lessee's failure to pay royalties shall be deemed

11

reasonable." Based upon this, defendants conclude that because the plaintiffs failed to provide the required documentation, BP has reasonable cause to withhold royalty payments until such documentation is received to ensure that the plaintiffs are in fact entitled to those payments.

The plaintiffs' arguments in their cross-motion for summary judgment and in their opposition to the defendants' cross-motion for summary judgment add little to the issues before the court. The plaintiffs only make conclusory allegations that BP is stealing their royalties and support these allegations with irrelevant evidence or none at all. For example, they mention that BP sent Benjamin Adams a check for $37.00 on October 20, 2010, to demonstrate that they are entitled to royalty payments from Lovia Delta Adams's interest. See Record Document 59. However, according to defendants, that payment relates to the royalty interest of Virgil Adams, Jr., not of Lovia Delta Adams. Lori M. Graham, a Division of Interest Analyst for BP, testified in her affidavit that her records show that "Virgil Adams, Jr. received a portion of Virgil Adams'[s] royalty interest separate from the interest that remains in suspense for Lovia Delta Adams."[8] Record Document 65, Ex. 1 at 2. She further explains that BP received all of the required documentation regarding Virgil Adams, Jr.'s royalty

---

[8] Despite the fact that plaintiffs seek relief in an amount that exceeds $100,000,000.00, the amount held in suspense attributable to Lovia Delta Adams's interest is only $209.61. See Record Document 72, Ex. B at ¶ 7.

interest and, therefore, that interest was transferred to his heirs and was placed in a pay status. See id.

As for Lovia Delta Adams's interest, BP received her death certificate and affidavit of heirship as were requested, but in order to complete the transfer, BP further required and requested the addresses and social security numbers for her living children and the death certificates and affidavits of heirship for her deceased children. See Record Document 52, Exs. 5 and 6. Benjamin Adams responded to BP's request by stating that all of Lovia Delta Adams's children are deceased and that he could not acquire any of their death certificates or social security numbers. Instead, he furnished the social security numbers, addresses, and death certificates of Virgil Adams, Jr.'s children.

According to letters sent to BP from Benjamin Adams, Lovia Delta Adams had nine children, all of whom are deceased: Virgil Adams, Jr.; Roosevelt Adams; Beatrice Adams Sanders; Booker T. Adams; Cassandra Adams; Octavia Adams Pugh; Estella Adams Roshell; Johnnie Adams; and Oleve Adams Reed. Virgil Adams, Jr. had eight children: Benjamin Adams; Joe Adams; Fred Adams; Roosevelt Adams; Josie N. Adams Chaney; David Adams; Curtis Adams; and James Adams. Four of those eight children are deceased and those four had a total of thirteen children

among them. Virgil Adams, Jr.'s four living children are the plaintiffs in this action. See id., Ex. 7.

Considering the complicated issues that can arise in the succession of mineral interests (and the Adams family is no exception), the court finds that BP's request for certain documentation to demonstrate heirship is more than reasonable. Not only is it reasonable, but under the terms of the lease agreement, the right to request such documentation lies with BP as the lessee, and the duty to furnish such documentation lies with the plaintiffs as lessors. Therefore, the court finds that BP had reasonable cause for nonpayment pursuant to Louisiana Revised Statute 31:137.

The court finds that the defendants have met their burden of showing that there is no genuine dispute of material fact as to the plaintiffs' remaining claims. The plaintiffs, however, have not met their burden of designating specific facts showing a genuine dispute, nor have they identified specific evidence and articulated how that evidence supports their case. Accordingly, the defendants' cross-motion for summary judgment should be granted, and the plaintiffs' claims as to BP should be dismissed.[9]

---

[9] Additionally, the plaintiffs incessantly demand in virtually all of their pleadings that default judgment be entered against defendants for failing to timely answer their complaint. The defendants filed a motion for extension of time to answer the plaintiffs' complaint, which was granted. See Record Document 34. Defendants responded to plaintiffs' complaint before the court's new deadline by filing a motion to dismiss. See Record Document 35. Sometime thereafter, the plaintiffs filed a motion for default judgment which was denied by this court. See Record Document 51. The plaintiffs' request for default judgment has already

As for the claims against Hanna, the plaintiffs have presented no facts that show how they are entitled to any relief from her, nor have they articulated any concrete arguments to warrant such relief. The claims against Hanna are entirely baseless and should be dismissed.

### III. CONCLUSION

For the foregoing reasons, the defendants' cross-motion for summary judgment is **GRANTED**, and the plaintiffs' cross-motion for summary judgment is **DENIED**. All of the plaintiffs' claims against BP and Hanna are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 26th day of March, 2012.

JUDGE TOM STAGG

---

been decided by this court and, nevertheless, has no merit.